Argued and submitted April 16, reversed in part; otherwise affirmed
October 3, 2001

In the Matter of
Matthew Krieger, a Youth.

## STATE ex rel JUVENILE DEPARTMENT OF UNION COUNTY,
*Respondent,*

*v.*

## MATTHEW KRIEGER,
*Appellant.*

3988J; A108646

33 P3d 351

Wes Williams argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

## KISTLER, J.

■ Youth appeals from a judgment finding him to be within the jurisdiction of the juvenile court for committing acts that, if committed by an adult, would constitute solicitation and disorderly conduct. We affirm in part and reverse in part.[1]

In May 1999, the principal of youth's school called him into his office after he discovered offensive writing on youth's school folder. The principal confiscated the folder and, after taking photographs of it, returned it to youth the next day. Youth was upset with the principal for calling him into his office and taking his folder. The next day, youth approached a student who was standing alone in the hallway and asked him if he wanted to help youth blow up or shoot up the school. Youth approached another student that same day, again asking if that student would like to help blow up the school and shoot everyone in it. Youth then pulled a third student aside and spoke to him privately, asking if the student wanted to help him blow up the school.

All three students responded similarly to youth, telling him his plans were "stupid" and "crazy." Youth never pursued any further discussion with the students after they rejected his offers, and none of those encounters involved specific plans to carry out the shooting or bombing. The three students involved met individually with the principal, and all gave similar accounts of their conversations with youth. After confronting youth and questioning him, the principal suspended him.

Youth was charged with multiple counts of solicitation and disorderly conduct. The trial court found that youth was within its jurisdiction on four counts of solicitation, which it merged into a single count.[2] It also found him within

---

[1] We review juvenile proceedings *de novo*. ORS 419A.200(5); *State ex rel Juv. Dept. v. G.P.*, 131 Or App 313, 319, 884 P2d 885 (1994). The facts alleged in the petition showing youth to be within the jurisdiction of the court must be established beyond a reasonable doubt. ORS 419C.400(2).

[2] Two counts of solicitation involved a student who may have overheard youth addressing one of the other students. Because youth did not directly solicit that student, the trial court did not find him to be within the court's jurisdiction on those counts.

its jurisdiction on one count of disorderly conduct. The court made youth a ward of the juvenile court and placed him on probation for a period of five years.

On appeal, youth assigns error to the trial court's decision on the solicitation charge. He argues that the state failed to prove that he commanded or solicited another to engage in a criminal act. We affirm the trial court's decision on that charge without discussion.

Youth also assigns error to the trial court's decision on the disorderly conduct charge. Youth argues that the state failed to prove that he engaged in "threatening behavior" under ORS 166.025(1)(a).[3] Youth starts from the proposition that only his speech was threatening. It follows, he reasons, that because the disorderly conduct statute does not prohibit speech, the trial court erred when it found him to be within its jurisdiction on that charge. The state responds that the trial court ruled correctly because youth's various actions, including approaching the students, gaining their attention, and talking to them about shooting and bombing the school, did in fact constitute threatening behavior.

ORS 166.025(1)(a) provides:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"* * * * *

"(a) Engages in fighting or in violent, tumultuous or threatening behavior[.]"

There is no dispute that youth had the requisite intent. The only question is whether the state also proved that he engaged in "threatening behavior."

Although the statute does not define threatening behavior, we construed that phrase in *State v. Cantwell*, 66 Or App 848, 676 P2d 353 (1984). The defendant in *Cantwell* had argued that the statute was both overbroad and vague. *Id.* at 850. He reasoned that the statute was overbroad

---

[3] Although the statute prohibits fighting, violent, tumultuous and threatening behavior, the amended petition charged youth only with engaging in "threatening behavior."

because the phrase "threatening behavior" could "include actual or symbolic constitutionally-protected speech." *Id.* at 852. In answering the defendant's argument, we explained: "We do not read the statute to encompass speech in the term 'behavior,' but construe it to refer only to physical acts of violence." *Id.* We reasoned that a separate subsection of the disorderly conduct statute, which prohibited speech, had been stricken from the statute and that the words "'violent, tumultuous or threatening behavior' describe only physical acts of aggression, not speech[.]" *Id.*[4]

We made the same point in response to the defendant's argument that the statute was unconstitutionally vague. We explained that the words "violent, tumultuous or threatening behavior" have "their commonly understood referents to physical force." *Id.* at 853. We held:

"ORS 166.025(1)(a) makes unlawful only *the use of physical force or physical conduct* which is immediately likely to produce the use of such force and which is intended to create or recklessly creates a risk of public inconvenience, annoyance or alarm."

*Id.* (emphasis added).

■    Under *Cantwell*, the question whether youth engaged in "threatening behavior" prohibited by the disorderly conduct statute must be answered by looking at his physical actions, not his speech. *Cf. State v. Chakerian*, 325 Or 370, 380, 938 P2d 756 (1997) (concluding that the related riot statute was not intended to reach protected expression).[5] We find nothing in youth's physical acts, separate from his

---

[4] In *State v. Spencer*, 289 Or 225, 231, 611 P2d 1147 (1980), the Oregon Supreme Court held that ORS 166.025(c), which prohibited the use of "abusive or obscene language" and "obscene gestures," violated Article I, section 8. The decision in *Spencer* aided us in reaching our decision in *Cantwell*. We determined that, because subsection (c) was directed at speech, subsection (a) proscribed only physical acts of aggression. *Cantwell*, 66 Or App at 852.

[5] In reaching that conclusion, the court explained in *Chakerian* that the disorderly conduct statute provided context for its interpretation of the riot statute. 325 Or at 379. It construed the disorderly conduct statute as we had in *Cantwell*. *See id.* It then reasoned that the similarity between the prohibition in subsection (a) of the disorderly conduct statute on "violent, tumultuous or threatening behavior" and the prohibition in the riot statute on "tumultuous and violent conduct" confirmed that the legislature did not intend to reach expression in enacting the riot statute. *Id.* at 379-80.

speech, that constitutes the sort of physical force or physical conduct likely to produce such force that the disorderly conduct statute prohibits. The evidence shows that youth approached classmates on three separate occasions, asking them if they wanted to help him shoot up and bomb the school. In two of the solicitations, youth asked the students to participate and did not use any force in doing so. In the third incident, youth grabbed hold of the student's shoulder and guided the student to a place where youth could address him privately. While grabbing hold of someone's shoulder is a physical act, it is also a common method of gaining someone's attention and does not rise to the level of physical force required under the statute. Similarly, youth's actions, apart from his speech, do not constitute physical conduct that is immediately likely to produce physical force. We are not persuaded that the act of approaching three students separately and gaining their attention is, in and of itself, immediately likely to produce physical force. We accordingly find on *de novo* review that the state failed to prove beyond a reasonable doubt that youth was within the jurisdiction of the juvenile court on the disorderly conduct charge.

Reversed as to the disorderly conduct charge; otherwise affirmed.